## MAGNOLIA PETROLEUM CO. v. THOMPSON et al.

### OHIO OIL CO. v. SAME.
### Nos. 11410–11413.

Circuit Court of Appeals, Eighth Circuit.
Aug. 29, 1939.

Rehearing Denied Sept. 26, 1939.

Writ of Certiorari Denied Nov. 22, 1939.

See 60 S.Ct. 180, 84 L.Ed. ——.

Order Vacated and Writ of Certiorari Granted Dec. 4, 1939.

See 60 S.Ct. 261, 84 L.Ed. ——.

Thomas H. Cobbs, of St. Louis, Mo., and Craig Van Meter, of Mattoon, Ill. (William H. Armstrong, of St. Louis, Mo., and Fred H. Kelly, of Mattoon, Ill., on the brief), for appellants.

Thomas T. Railey, of St. Louis, Mo. (Russell L. Dearmont, of St. Louis, Mo., on the brief), for appellees.

Before SANBORN and THOMAS, Circuit Judges, and SULLIVAN, District Judge.

THOMAS, Circuit Judge.

These are four appeals in bankruptcy consolidated by stipulation of the parties and presented upon a single record. There are but two appellants, and two of the appeals are precautionary only. The issues arise in summary proceedings under section 77 of the Bankruptcy Act (Section 205, Title 11, U.S.C.A.) for the reorganization of a railroad in In the Matter of Missouri Pacific Railroad Company, Debtor, and Missouri-Illinois Railroad Company, Subsidiary, Debtor. The appeals are from an interlocutory order entered November 14, 1938.

The summary proceeding in which the dispute arises was commenced by the appellee trustee on November 1, 1938, on which date he filed a petition in the bankruptcy court having jurisdiction of the reorganization proceedings. The petition was entitled "Petition of Trustee for Deter-mination of Title and for Advice and Directions Respecting Certain Proposed Oil Operations on Right-of-way Near Salem, Illinois."

The petition alleged that by orders previously entered in the reorganization proceedings the trustee had been granted blanket authority to enter into gas and oil leases and to contract for the drilling of oil wells on the rights of way of the debtor companies; that the right of way of the subsidiary Missouri-Illinois Railroad traverses territory in Illinois where oil deposits under the ground have been proved to exist in paying quantities; and that the trustee had accordingly solicited bids for lease of oil rights upon the right of way of the subsidiary across section 20, township 2 north, range 2 east of the 3rd P. M., in Marion County, Illinois.

It was further alleged that the appellant oil companies had served notice upon the trustee questioning his right and title to the oil under the right of way; that he is advised that there may be other parties, unknown by name, who will contend that they own certain interests in portions of the oil and gas underlying the right of way; and that "because of these possible adverse claims, Trustee now seeks advice and directions of the Court in the premises."

It is then alleged that the subsidiary had, and that the trustee has succeeded to, the title originally conveyed to the Centralia & Chester Railroad Company by the three following warranty deeds. The first, dated August 13, 1896, conveys "A strip of land for right of way for said railroad Company Sixty feet wide over and across the Southwest Quarter (¼) of the Northeast quarter (¼) of Section Twenty (20), Township Two (2) North, Range Two (2) East of the Third Principal Meridian."

The second deed, dated August 14, 1896, conveys "A strip of ground Sixty-six (66) feet wide for right-of-way for said Railroad Company over and across the East Half (½) of the Northwest quarter (¼) of the Southwest Quarter (¼) of Section Twenty (20) in Township Two (2) North, Range Two (2) East of the Third principal Meridian."

The third deed, dated January 3, 1898, was executed by Caroline Rusler, a widow, and purports to convey "A strip of ground for right-of-way for said Company Sixty feet (60) wide over and across the South-

east Quarter (¼) of the Northeast Quarter (¼) and the West Half (½) of the Northwest Quarter (¼) of the Southwest Quarter (¼) and the Southeast Quarter (¼) of the Northwest Quarter (¼), all of said lands in Section Twenty (20), Town Two (2) North, Range Two (2) East of the third principal Meridian, it being the strip of land over and across said above described tracts of land where the said Railroad is now located."

It was further alleged that the petitioner is advised, and believes that shortly after the conveyances were delivered, the lands so conveyed had been fenced and used by the trustee and his predecessors without interruption for at least 20 years; and that he believes that he is lawfully vested with title to all the oil and mineral rights under the land.

The petition then alleges:

"Petitioner is advised and believes that numerous oil wells have been drilled in close proximity to Trustee's right-of-way, and that unless prompt action be taken to remove the oil underlying said right-of-way, it will be drained into the wells on adjacent lands, and the value thereof will be forever lost to the stockholders and creditors of the Missouri-Illinois Railroad Company.

"This court of bankruptcy, by reason of Trustee's possession of said property, has jurisdiction, under Section 77 of the Bankruptcy Act, to determine all questions respecting title thereto, and pending the determination of said title, has jurisdiction to instruct and direct Trustee to take such action as the Court may deem advisable to prevent the waste of said oil and to recover and salvage it for the interest of the owners as their rights may by this Court be hereinafter determined, and has authority to direct that the expenses thereof be paid out of the proceeds of the oil so recovered. It is not, in the opinion of Trustee, practicable or advisable to await the adjudication of adverse claims and the possible review of this Court's decision respecting title before beginning the drilling for oil upon said right-of-way.

"After a careful analysis of the various bids hereinabove referred to, and having due regard for financial backing, experience, and reputation of the bidders, and the terms and conditions offered, Trustee is advised and believes that the bid most favorable to the trust estate is that made by the Blackstock Oil Company.

"Subject to the approval of this Court, Trustee has therefore negotiated a contract with Blackstock Oil Company, copy of which is filed herewith as 'Exhibit A.'"

The proposed contract with the Blackstock Oil Company is then set out in full.

The petitioner recommended that appellants be subpoenaed and that notice be published directed to other claimants to appear and show cause, upon a day fixed, why the court should not decree that the oil and mineral rights under the right of way across section 20 is not vested in the petitioner, and that upon their failure to show cause they be enjoined from asserting title to the land or to the oil and gas thereunder; and that the petitioner be authorized to execute the contract with the Blackstock Oil Company, to sell the oil and to impound the profits for the benefit of the owners as finally determined by the court.

On November 9, 1938, the appellant oil companies appeared and filed answers to the trustee's petition. They alleged that they held oil leases from the owners of the fee titles to the lands in question by virtue of which they were the owners of the oil, gas and minerals underlying said lands. They admitted the execution and delivery of the deeds relied upon by the trustee, but alleged that the deeds conveyed only railroad right of way easements over the land and did not convey the oil and gas rights thereunder; and they denied that the trustee or his predecessors in interest had ever had title to or possession of the oil, gas and mineral rights underlying the right of way. They denied that the court had jurisdiction in this summary proceeding to determine the adverse claims of the parties to the oil and gas rights on the ground that the trustee had neither actual nor constructive possession of the underlying oil and gas. They alleged that the trustee, having only an easement, had no right to let a contract for the drilling of wells on the right of way to the underlying oil deposits, and that the court was without jurisdiction to direct him to do so. They denied title by adverse possession; and it was alleged that Caroline Rusler at the time she executed and delivered the third deed, set out above, owned only an undivided one-half interest in the land described therein.

A hearing was had before the court upon the petition of the trustee and the answers of the appellants on November

9, 1938. In his opening statement to the court, counsel for the trustee said that the trustee asked the court to issue an order of publication bringing in any adverse claimants who are unknown and that the court hear evidence and determine the claims to adverse title. He then proceeded:

"Since the printing of this publication will require some time, or may require some time and the oil under the right of way be dissipated and drawn into other wells pending this delay, the Trustee, following precedents often followed in these oil cases, has asked the Court to vest Mr. Thompson, as Trustee of the Missouri-Illinois Railroad, with the same authority that is usually vested in an independent receiver appointed pendente lite, that is, with the power to drill—to enter into a drilling contract, to conserve and sell the oil, and to hold the proceeds of the oil for the account of whom concerned, as determined by the subsequent order of this Court, paying out in oil, as far as possible, the reasonable expenses of drilling, conserving and selling the oil. * * *

"The question, therefore, is whether the conveyance of a strip of land for right of way sixty feet wide is a conveyance of a fee simple title of that land, the description of right of way being merely descriptive and for the purpose of locating the particular narrow strip of land, or whether that is merely a conveyance of a right of way which would be a mere easement for railroad purposes and, according to the claim of these adverse claimants, would not authorize the Trustee to drill and retain the oil underlying that property. That is the real question that is before this court, and it may be necessary for the Court to make up his mind on that question in connection with this particular motion (petition)."

The testimony taken on the hearing is set out in the record. The deeds relied upon by the trustee and the leases under which the appellants claim were admitted in evidence. The other testimony was directed to the claim of the trustee that numerous oil wells have been drilled in close proximity to the right of way and that unless prompt action be taken to remove the oil it would be drained off and lost; to the cost of drilling and the number of wells necessary to preserve the oil; and to the ability of the Blackstock Oil Company to drill the wells and market the oil.

It was stipulated that Mrs. Rusler had but a half interest in the land described in the deed executed by her, and that the railroad had been on the land and that it had been fenced for over twenty years.

The interlocutory order appealed from enjoined, until the court may order otherwise, all parties, regardless of whether their appearance shall have been entered in these proceedings, from asserting or attempting to enforce, other than in these proceedings, any adverse claim to the premises or to the mineral, oil or gas in or underlying said premises or extracted therefrom, or from attacking or interfering with the title thereto of any purchaser holding under or through the trustee.

The interlocutory order also purported to vest the trustee with title to the oil and gas underlying or removed from the premises with right to convey the title thereto free and clear of all claims predicated upon alleged adverse ownership of any part of the land upon which the right of way is situated. The order further authorized the trustee to enter into a contract with Blackstock Oil Company to drill not more than six wells on the right of way over the lands title to which is in dispute, and to remove, conserve and market the oil and gas taken from the premises. It was provided that the proceeds from the sale of such oil and gas shall be paid over to the trustee, after deducting the expenses provided for in the contract and other necessary expenses in drilling, removing, conserving and marketing said oil and gas; and that the trustee shall hold the remainder of the proceeds for the account of adverse claimants and parties in interest as their respective rights may hereafter be determined by the court.

The order also provided for publication of notice to all claimants to appear and show cause why the court should not decree that the trustee is vested with title to all the oil and mineral rights under its right of way across said section 20; and the court reserved jurisdiction to hear on their merits any adverse claims to title.

It is clear that the trustee in this summary proceeding, by his petition for advice and directions, sought an order of the court of bankruptcy in the nature of a decree quieting title to its right of way across section 20 against the appellant oil companies and unknown claimants. He further sought an order clothing him with

the powers of a receiver pendente lite and authorizing him to extract the oil underlying the right of way and to market it. The appellants challenged the jurisdiction of the court to determine title or to grant the trustee the requested powers. The court not only granted all the trustee asked, but also enjoined appellants and all other claimants from asserting any rights or claims other than in these proceedings and from interfering with the drilling of wells and marketing the oil. In vesting the trustee with the powers of a receiver and authorizing him to drill wells and sell the oil, no bond for the protection of the appellants was required and no restrictions were imposed upon the price for which the oil may be sold nor the expenses which may be incurred in producing it.

The first question presented upon this appeal, as it was the first question for the determination of the court below, relates to the jurisdiction of the district court as a court of bankruptcy to determine in a summary proceeding the adverse claims to the fee title to the land underlying the railroad right of way in which the oil deposits are found.

 It is now settled that the bankruptcy court has power in a summary proceeding to adjudicate, without consent, controversies concerning the title to property the physical possession of which is in the actual or constructive possession of the trustee, and, with consent of the adverse claimants, the title to property not in the possession of the trustee; but the court is without power to adjudicate adversary claims to the title to property, without consent, not in the actual or constructive possession of the trustee. See Taubel-Scott-Kitzmiller Company, Inc., v. Fox et al., 264 U.S. 426, 432, 433, 44 S.Ct. 396, 68 L.Ed. 770; Steelman v. All Continent Corp., 301 U.S. 278, 286, 57 S.Ct. 705, 81 L.Ed. 1085; Schumacher v. Beeler, 293 U.S. 367, 55 S.Ct. 230, 79 L.Ed. 433; Taylor v. Sternberg, 293 U.S. 470, 55 S.Ct. 260, 79 L.Ed. 599; First Nat. Bank v. Conway Road Estates Co., 8 Cir., 94 F.2d 736, 737; In re Prima Co., 7 Cir., 98 F. 2d 952, 957.

Upon the question of possession and jurisdiction, the court found: "(a) That said Guy A. Thompson, as Trustee, Missouri-Illinois Railroad Co., Debtor, acting under the jurisdiction of this Court, is in actual possession of the property herein-before described, under assertion of claim to fee-simple title thereto, and that this Court has accordingly jurisdiction over the subject matter and is vested with authority to determine the interest of adverse claimants in and to the mineral, oil and gas rights in and underlying said property and to protect the interest of the Trustee therein."

The appellants contend that the court erred in finding that the trustee is in actual possession of the property, and that it consequently erred in assuming jurisdiction to go forward and make the order complained of here. The evidence to support this finding consists of the deeds conveying the right of way to the trustee's predecessor in interest and the admission that the railroad company has constructed and operates a railroad thereover. Counsel for the parties agree that if the deeds conveyed a fee simple title to the strip of land granted such title and possession are sufficient to support the jurisdiction of the court to adjudicate the controversy; and they also agree that if the deeds grant and convey a railroad right of way easement only, such possession did not extend either actually or constructively to the oil and gas underlying the right of way, from which it would follow that the court was without jurisdiction.

 In United States v. Corrick, 298 U. S. 435, 437, 56 S.Ct. 829, 830, 80 L.Ed. 1263, the Supreme Court said that "On appeal from the granting or refusal of an interlocutory injunction, our inquiry is limited to the question whether the court abused its discretion." The court held in that case that when "want of jurisdiction is evident upon the face of the bill" such action by the lower court constitutes an abuse of discretion. If we go no further at this point than to discuss the subject of jurisdiction, that rule must be applicable in the present case. Here the petition of the trustee sets out the deeds under which he claims to have derived a fee simple title to the land under the right of way, and under which his predecessor took possession. The deeds are the basis of his claim to actual possession as well as of his claim to the right of possession of the oil and gas. When, therefore, the court found that the trustee is in "actual possession" he was bound to find, and his finding implies, that the deeds in question conveyed a fee simple title to, and not an easement in, the strip of land described.

This situation compels this court, in order to arrive at a conclusion as to whether or not the lower court abused its discretion in entering the order appealed from, to consider and determine whether or not the deeds conveyed a fee simple title or only a railroad right of way easement. Stated concretely, the question to be answered is whether a warranty deed conveying to a railroad company "A strip of ground (land) 60 (66) feet wide for right of way for said railroad Company over and across" a larger tract of land vests a fee simple title in the grantee or only a railroad right of way easement.

■ Counsel for the parties agree that since the land in question is situated in Illinois the construction of the deeds is controlled by the laws of that state. Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290; Benedict v. Ratner, 268 U.S. 353, 359, 45 S.Ct. 566, 69 L.Ed. 991; Buford v. Kerr, 8 Cir., 90 F. 513, 514. No Illinois decision has been found in which a deed or other conveyance has been construed where the granting clause is identical with that found in the deeds under consideration. Under these circumstances we have no choice but to analyze the issues for ourselves, exercising an independent judgment with respect to the issues presented, aided by and with deference to the Illinois law of conveyancing. Driscoll v. Edison Light & Power Co., 59 S.Ct. 715, 83 L.Ed. 1134; Terry v. New York Life Ins. Co., 8 Cir., 104 F.2d 498, 502; In re Pointer Brewing Co., Verbst, Trustee, v. Michael Yundt Company, 8 Cir., 105 F.2d 478, decided July 19, 1939; New York Life Ins. Co. v. Jackson, 7 Cir., 98 F.2d 950, 952.

■■ Under Illinois law a railroad company may acquire its right of way by condemnation (Section 13, Article 2 of the Constitution of Illinois, Smith-Hurd Stats.) or by deed. The estate acquired by condemnation proceedings is an easement only, and the fee remains in the owner. Chicago & E. I. R. Co. v. Clapp, 201 Ill. 418, 66 N.E. 223; Branch v. Central Trust Co., 320 Ill. 432, 151 N.E. 284, 288. The estate acquired by deed may be either an easement or a fee simple title. If the deed grants a right of way only the fee remains in the grantor and the railroad company is vested with an easement and can use the land for railroad purposes only. Wiggins Ferry Co. v. O. & M. Ry. Co., 94 Ill. 83; Ill. Cent. R. Co. v. O'Connor,

154 Ill. 550, 39 N.E. 563; Walker v. Ill. Cent. R. Co., 215 Ill. 610, 74 N.E. 812; Branch v. Central Trust Co., supra; Joseph v. Evans, 338 Ill. 11, 170 N.E. 10, 14. But the company may acquire by deed an unlimited fee simple estate in the land used by it for its right of way or for other railway purposes. Ill.R.S.1927, c. 114, § 20(3); Walker v. Ill. Cent. R. Co., supra; Spierling v. Ohl, 232 Ill. 581, 83 N. E. 1068, 13 Ann.Cas. 430; and see Rockford Trust Co. v. Moon, 370 Ill. 250, 18 N.E.2d 447; Noyes v. St. Louis, A. & T. H. R. Co., Ill., 21 N.E. 487.

■ Prior to the adoption of the Conveyancing Act in Illinois deeds were construed according to the rules of the common law, and the word "heirs" was essential to an inter vivos conveyance of an estate of inheritance. A grant of land to "A and his heirs" was held sufficient to convey a fee simple title, and so far as the habendum clause in the deed was inconsistent it was held void. The Conveyancing Act was designed to abolish the technical rules of the common law relating to the construction of deeds. It provided (Ill.R.S.1937, c. 30, § 12) that "Every estate in lands which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction or operation of law." Under this statute the use of the word "heirs" is no longer necessary to the conveyance of a fee; and "the estate granted may be defined or limited by language used in any part of the deed, without reference to the rule of construction as to the granting clause." Harder v. Matthews, 309 Ill. 548, 141 N.E. 442, 444.

■ While the statute, supra, requires that every estate shall be deemed an estate in fee unless a contrary intention is clearly expressed, it is not essential that express words of limitation be used if it appears by necessary implication that a less estate was granted. Lehndorf v. Cope, 122 Ill. 317, 13 N.E. 505; Hempstead v. Hempstead, 285 Ill. 448, 120 N.E. 782.

■ In the construction of deeds to which the conveyancing statute is applicable the Illinois court has repeatedly held that the primary object is to ascertain and give effect to the intention of the parties

unless to do so will violate an established rule of property. Cover v. James, 217 Ill. 309, 75 N.E. 490; Waller v. Hildebrecht, 295 Ill. 116, 128 N.E. 807; Bear v. Millikin Trust Co., 336 Ill. 366, 168 N.E. 349, 73 A.L.R. 173; Woods v. Seymour, 350 Ill. 493, 183 N.E. 458, 459. "Where words of inheritance are not used, the entire context may be considered and every word used must, if possible, be given weight in determining the estate granted." Woods v. Seymour, supra; Bear v. Milliken Trust Co., supra. Force should be given to each clause and the intention of the parties as gathered from a consideration of the whole instrument is to be given effect; no word or term employed by the parties should be rejected as meaningless or surplusage. Mittel v. Karl, 133 Ill. 65, 24 N.E. 553, 8 L.R.A. 655; Bauman v. Stoller, 235 Ill. 480, 85 N.E. 657; Kearney v. Kirkland. 279 Ill. 516, 117 N.E. 100, 103. But in ascertaining this intention "the courts are not confined to the strict and literal construction of the language used, when to do so will frustrate the intention of the parties as gathered from the four corners of the instrument." Kearney v. Kirkland, supra; McCoy v. Fahrney, 182 Ill. 60, 55 N.E. 61; Bear v. Milliken Trust Co., supra.

 The deeds under consideration are statutory deeds without words of inheritance. The paramount rule of construction should, therefore, be to give effect to the intent of the grantor, if it is legal, as collected from the whole instrument; but, if doubt as to the meaning of the words used arises, such doubt must be resolved in favor of the grantee, unless surrounding circumstances indicate a contrary intent. Williams v. Swango, 365 Ill. 549, 7 N.E.2d 306, 309; Wise v. Wouters, 288 Ill. 29, 123 N.E. 35.

It is necessary in applying these rules of conveyancing and of the construction of deeds to keep in mind the distinction on the one hand between a fee in land and the description in the grant of a fee and on the other hand a railroad right of way easement and the description in the grant of such an easement.

 The grant of a fee in land conveys to the grantee complete ownership, immediately and forever, with the right of possession from boundary to boundary and from the center of the earth to the sky, together with all lawful uses thereof. Under Illinois law a deed will effect this result if it contains appropriate words of grant and a definite description of the land. If the deed is in this form and in addition contains words stating the purpose or use contemplated by the parties to the contract such words are regarded as surplusage and not as conditions or restrictions, as will be pointed out below. The two essentials of such a deed are the words of grant and the clear description of the thing granted.

 The essentials of the conveyance of an easement are also the words of grant and the description of the thing granted; but an easement is not the complete ownership of land with the right to use it for all lawful purposes perpetually and throughout its entire extent. An easement is a right only to one or more particular uses; and a deed conveying an easement must not only describe the land to which the use granted attaches, but it must also describe the particular use or uses permitted. Words, therefore, which, if used in a deed granting a fee, may be regarded as surplusage, if used in a deed granting an easement, may constitute the essential description of the thing intended to be conveyed.

An examination of the deeds under consideration with the Illinois law and rules of construction in mind is, we think, convincing that in each of them the clear intent, expressly stated, was to convey to the railroad company only a right of way easement for its railroad, and not a fee. The language used to describe the easement is apt and appropriate for that purpose and no other. It designates the land to be subject to the use—"a strip of land 60 (66) feet wide * * * over and across"; it describes the use permitted—"for a right of way for said railroad." This language makes it perfectly clear that the parties met for the sole purpose of contracting for a railroad right of way. Obviously the railroad company was interested at that time in no other use of the land else it would assuredly have acquired more than a strip of land 60 feet wide.

Counsel for appellee argue that the words "over and across", as used in the deeds, are descriptive of the words "right of way", and the words "right of way" are descriptive of location by reference to the intended use of the "strip of ground" to be conveyed. In this we think they err. The words "over and across" are descriptive of the location of the "strip

of ground", and the words "for right of way" describe the use or easement, that is, the estate intended to be conveyed. No other view can be reconciled with the language of the Rusler deed where there is added to the description the words, "it being the strip of land over and across said above described tracts of land where the said Railroad is now located." The Rusler deed was executed in 1898 and the other two in 1896. Apparently the railroad had not been located when the earlier deeds were made, but we perceive no sound reason why they should be construed differently.

To sustain the contention that the deeds to the railroad company convey a fee the appellee, emphasizing the words "for a right of way for said railroad company", relies upon cases holding that where a deed conveying a fee contains words merely declaratory of the purpose of the conveyance such words do not, of themselves, render the estate conditional nor operate as a restriction upon its use. Rockford Trust Co. v. Moon, 370 Ill. 250, 18 N.E.2d 447; Weihe v. Lorenz, 254 Ill. 195, 98 N.E. 268; Downen v. Rayburn, 214 Ill. 342, 73 N.E. 364, 3 Ann.Cas. 36; Tinker v. Forbes, 136 Ill. 221, 26 N.E. 503; Warren County v. Patterson, 56 Ill. 111; Noyes v. St. Louis, A. & T. H. R. Co., Ill., 21 N.E. 487. A brief analysis of these cases discloses that they are not in point.

In the Moon case, supra, the grant was of a definitely described tract of land to a railroad company. Standing alone at the end of the deed were the words [370 Ill. 250, 18 N.E.2d 448]: "Growing out of the construction and operation of the railroad of said Company, its successors and assigns." The issue decided arose in a suit to quiet title after the land ceased to be used for railroad purposes. It was contended that the quoted words of the deed created a right of entry for condition broken or a possibility of reverter when the land ceased to be used for railroad purposes. In denying this contention the court said: "Even where the deed contains words stating the consideration for or the purpose of the conveyance, they do not, of themselves, render an estate conditional. * * * The clause in the deed had no meaning whatever and stands alone."

In the Weihe case, supra [254 Ill. 195, 98 N.E. 269], the deed conveyed a tract of land described by metes and bounds, and added "I also give ten feet wide adjoining on the south of this tract, or the strip between this tract and the alley I gave in my deed of September 3, 1881, to John Lorenz, for alley purposes." The court held that the words "for alley purposes" did not limit the estate granted.

In the Patterson case, supra, the grantor agreed to sell to the grantee "block number 16, in the city of Monmouth * * for court house and other county buildings." The court held in substance that the words "for court house" etc. did not create a condition nor limitation on the power of alienation.

In the Tinker case, supra [136 Ill. 221, 26 N.E. 506], the deed conveyed lots 12 and 13 and also, "for the purpose of locating proper water wheel and races to draw said water, the east half of lot 9" etc. In an injunction suit to restrain the construction of a building on the east half of lot 9 the court held that the quoted words did not constitute a condition nor indicate an intention that the appropriation of the premises to any other purposes should have the effect of defeating the estate granted.

The case of Downen v. Rayburn, supra, was an action of ejectment; and the issue was whether the conveyance of "a certain tract or parcel of land to be used as a church location * * * described as follows: Lot No. 16, in block No. 5 * * to have and to hold the said premises * * forever" vested a fee simple or a conditional fee. The question of whether or not the deed vested an easement was not raised. The court observed that "If the words in question [to be used as a church location] can be regarded in any sense a condition, they must constitute a condition subsequent, and not a condition precedent. 'A subsequent condition is one which operates upon an estate already created and vested, and renders it liable to be defeated.'" It was held that the words in question do not constitute a condition subsequent but are merely declaratory of the purpose of the conveyance.

Noyes v. St. Louis, A. & T. H. R. Co., supra, was a suit to remove a cloud on title. Following the granting clause in a deed to two railroad companies was the statement [21 N.E. 488]: "The above tract * * * is granted to said companies for the erection and maintenance thereon of the freight-house of said companies, or either of them, together with side tracks,

turn-outs, switches, fixtures, and buildings, and for such other general railroad purposes as may be necessary and convenient for said company." The issue was whether these words constituted a condition subsequent rendering the grant liable to be defeated by failure to perform the conditions imposed. The court observed that the language used is very broad and general; that it authorizes the use of the ground for general railroad purposes as well as for the specific purposes named; that "The property at all times has been used for railroad purposes, and has at no time been devoted to any other or different use;" and the court said: "We are not inclined to hold that the deed vested the title in the grantees upon condition to be subsequently performed; and if the grant was conditional we could not say, from the record in this cause, that in the use made by the grantees and their assigns of this land there is such a substantial failure to perform as would justify the setting aside of the deed."

Counsel in effect concede that the issue in each of these cases was whether the deeds granted a fee or a conditional fee; while in the present case the question is whether the instruments convey a fee or a railroad right of way easement. But, they say, "each of the decisions does specifically hold that language designating the intended use to which the property conveyed is to be subjected, does not constitute a limitation or restriction upon the absolute fee-simple title that would otherwise be conveyed"; and they contend that if a declaration of the use intended to be made in the conveyance of a fee does not limit the grant, then the same sort of description of the use can not change the grant from a fee to an easement. Therefore, they conclude, the conveyance of a "strip of land for right of way for said railroad company" is a conveyance of the fee title and not of an easement solely for railroad purposes.

 The argument confuses the language necessary to the description in the grant of estates of different types. A fee and a perpetual easement, as in these deeds, are both freeholds in Illinois. Funston v. Hoffman, 232 Ill. 360, 83 N.E. 917, 918. Both may be conveyed subject to conditions and limitations. But the description of the use or easement in the one cannot be compared with the declaration of pur-

pose in the other without obscuring the intent of the grantor of the easement.

 It is further argued upon this point that in any event a railroad right of way has the attributes of a conditional fee, the implied inference again being that the effect of words used to declare the purpose of the grant of a fee is the same as the effect of similar words used to describe an intent to convey a railroad right of way easement. To support this reasoning counsel cite Walker v. Ill. Cent. R. Co., 215 Ill. 610, 74 N.E. 812; Oswold v. Wolf, 126 Ill. 542, 19 N.E. 28; Western Union Tel. Co. v. Penn. R. R. Co., 195 U.S. 540, 570, 25 S.Ct. 133, 49 L.Ed. 312, 1 Ann. Cas. 517; New Mexico v. United States Trust Co., 172 U.S. 171, 19 S.Ct. 128, 43 L.Ed. 407; and Meyer v. Pittsburgh, C., C. & St. L. Ry. Co., 63 Ind.App. 156, 113 N.E. 443. These decisions are based upon the fact that the degree of interest in land granted in an easement differs with the nature of the easement. In an easement for a path or way over land the interest is slight; in an easement for a canal or flowage right the degree of interest is much greater. In one sense some of the attributes of a fee may inhere in an easement. As pointed out in the Walker case, supra, a right of way for a railroad is an easement, which includes the right to use a strip of land perpetually and practically exclusively. No unauthorized person has any right upon the premises for any purpose. This is very different from saying that such a right of way is a conditional fee. Although the grant of a railroad right of way gives a right to the exclusive use of the surface for railroad purposes it does not convey a fee title to the oil and gas several hundred feet below the surface. Extracting the oil and gas and selling them is not an element of use for railway right of way.

 These arguments, while in some respects persuasive, are not convincing. It must be true according to the rules of construction of deeds prevailing in Illinois and recited above that the only purpose of construction is to determine the intent of the parties, or more particularly of the grantor. This is true when the dispute is whether the grant is of a fee or a conditional fee as well as when the question is whether it is a fee or an easement. But when the court examines the writing to discover the grantor's intent as expressed

therein the inquiry is not the same in the two cases. When it is admitted that the instrument grants a fee courts do not look with favor upon conditions subsequent, and words indicating purpose or use will not be construed as restrictions, Noyes v. St. Louis, A. & T. H. R. Co., supra; but the distinguishing characteristic of an easement is a use, and the instrument creating the right must give a reasonably accurate description of the right conveyed. 19 C. J. 906. The Supreme Court of Illinois did not ignore words descriptive of the purpose of the grant when it became necessary to determine the issue of whether a deed operated as a conveyance of a fee or of an easement in Waller v. Hildebrecht, supra. And in the deeds now before us the words "for right of way for said railroad company" cannot be disregarded without violating the fundamental rule of construction that the intent of the parties must be gathered from the instrument as a whole.

In the Waller case, supra, it was held that considering the object to be attained a warranty deed granting for a stated consideration the east 10 feet of lot 7 and the south 10 feet of lot 6 "to be used as al-ley, only, in common by both parties hereto" conveyed a right of way only and not a fee. And the construction to be placed upon right of way deeds in general is illustrated in the opinion of the Supreme Court of Illinois in the case of Branch v. Central Trust Co., 320 Ill. 432, 151 N.E. 284.

While the decisions of courts of other jurisdictions construing deeds similar to the deeds involved in this cause are in conflict we think the weight of authority supports the views herein expressed. Some of the leading cases pro and con are cited in the footnote.[1] The generally accepted rule is stated in 1 Thompson on Real Property, 534, par. 421, as follows: "Where the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad, the deed passes an easement only, and not a fee, though it be in the usual form of a full warranty deed."

We are not unmindful that in construing a deed somewhat similar to the deeds involved in this case the district court of Illinois in Carter Oil Company v. Welker, 24 F. Supp. 753, reached the conclusion that the deed vested a fee simple title in

---

[1] Pro: Abercrombie v. Simmons, 71 Kan. 538, 81 P. 208, 1 L.R.A.,N.S., 806, 114 Am.St.Rep. 509, 6 Ann.Cas. 239; Roxana Petroleum Corp. v. Jarvis, 127 Kan. 365, 273 P. 661; Danielson v. Woestemeyer, 131 Kan. 796, 293 P. 507; Chicago Great Western R. Co. v. Zahner, 145 Minn. 312, 177 N.W. 350; Norton v. Duluth Transfer Co., 129 Minn. 126, 151 N.W. 907, Ann.Cas.1916E, 760; State v. Griffith, 342 Mo. 229, 114 S.W.2d 976; Kansas City Southern Ry. Co. v. Sandlin, 173 Mo.App. 384, 158 S.W. 857; City of Knoxville v. Phillips, 162 Tenn. 328, 36 S.W.2d 434; Parks v. Gates, 186 Cal. 151, 199 P. 40; Blakely v. Chicago, K. & N. R. Co., 46 Neb. 272, 64 N.W. 972; Fitchburg R. Co. v. Frost, 147 Mass. 118, 16 N.E. 773; Rogers v. Pitchford, 181 Ga. 845, 184 S.E. 623; Gaston v. Gainesville & D. Electric Ry. Co., 120 Ga. 516, 48 S.E. 188; Noel Estate v. Kansas City Southern & Gulf Ry. Co., 187 La. 717, 175 So. 468; and see Alabama Great Southern R. Co. v. McWhorter, 202 Ala. 455, 80 So. 839; Netherlands American M. Bank v. Eastern Ry. & L. Co., 142 Wash. 204, 252 P. 916; Barton v. Jarvis, 218 Ky. 239, 291 S.W. 38; Ottumwa, C. F. & St. P. R. Co. v. McWilliams, 71 Iowa 164, 32 N. W. 315; Jones v. Van Bochove, 103 Mich. 98, 61 N.W. 342; Quinn v. Pere Marquette Ry. Co., 256 Mich. 143, 239 N.W. 376; People v. Walsh, 211 N.Y. 90, 105 N.E. 136; Robinson v. Missisquoi R. Co., 59 Vt. 426, 10 A. 522; Atlanta, B. & A. Ry. Co. v. Coffee County, 152 Ga. 432, 110 S.E. 214; New York Cent. & H. R. R. Co. v. Aldridge, 135 N. Y. 83, 32 N.E. 50, 17 L.R.A. 516.

Contra: Marland v. Gillespie, 168 Okl. 376, 33 P.2d 207; Brightwell v. International-Great Northern R. Co., 121 Tex. 338, 49 S.W.2d 437, 84 A.L.R. 265; Johnson v. Valdosta, M. & W. R. Co., 169 Ga. 559, 150 S.E. 845; Killgore v. Cabell County Court, 80 W.Va. 283, 92 S.E. 562, L.R.A.1918B, 692; Ballard v. Louisville & N. R. Co., Ky., 5 S.W. 484; and compare Sherman v. Sherman, 23 S.D. 486, 122 N.W. 439; Arkansas Improvement Co. v. Kansas City So. Ry. Co., 189 La. 921, 181 So. 445; Breckenridge v. Delaware, L. & W. R. Co., N.J.Ch., 33 A. 800; Concklin v. New York Cent. & H. R. R. Co., 149 App.Div. 739, 134 N.Y.S. 191; Stevens v. Galveston, H. & S. A. Ry. Co., Tex.Com. App., 212 S.W. 639; Groce v. Southern Ry. Co., 164 S.C. 427, 162 S.E. 425; Radetsky v. Jorgensen, 70 Colo. 423, 202 P. 175; Des Moines City Ry. Co. v. City of Des Moines, 183 Iowa 1261, 159 N.W. 450, 165 N.W. 398, L.R.A.1918D, 839.

the railroad company, and not an easement. While that decision commands great respect, in so far as it is inconsistent, if at all, with the views herein expressed, we are not inclined to follow it.

A further question for consideration concerns the rights of the parties to the oil and gas underlying the land described in the deed by Mrs. Rusler. We do not regard the difference in this and in the other two deeds as of any consequence. This deed vested only a railroad right of way easement in the grantee at most. The parties have stipulated that the deed was executed and delivered by Mrs. Rusler to the trustee's remote grantor; that at that time she owned only an undivided half interest in the premises described in the deed; and that the railroad company has had possession of the right of way over the land and has had the land under fence for more than 20 years. It is conceded that there is a defect in the title; but appellee claims that such defect has been cured by the statute of limitations.

Since we hold that the deed granted only an easement to the railroad company, it follows that the possession of the trustee and his grantors under the deed did not extend to the oil and gas underlying the land. It also follows that possession of the surface for a railroad right of way was not notice of a claim to the oil and gas thereunder. Branch v. Central Trust Co., supra. Under the issues the court is not called upon to determine whether or not the railroad company has acquired complete title to its right of way over the land by adverse possession.

Counsel for appellee in their briefs argue that even conceding that the court was without jurisdiction to determine title to the mineral and oil rights because the trustee was not in actual or constructive possession, that part of the order appointing a receiver pendente lite with authority to take possession, drill wells and extract and sell the oil was not an abuse of discretion. It cannot be said that the appointment of a receiver under such circumstances is not erroneous nor that if he takes possession from the owner under such a void appointment that his act is not wrongful. Compare: Burnrite Coal Briquette Co. v. Riggs, 274 U.S. 208, 47 S.Ct. 578, 71 L.Ed. 1002; Lion Bonding & Surety Co. v. Karatz, 262 U.S. 640, 43 S.Ct. 641, 67 L.Ed. 1151; Atlantic Trust Co. v. Chapman, 208 U.S. 360, 28 S.Ct. 406, 52 L.Ed. 528, 13 Ann.Cas. 1155; United States v. Stone, 7 Cir., 187 F. 577; Noxon Chemical Products Co. v. Leckie, 3 Cir., 39 F.2d 318; W. F. Potts Son & Co. v. Cochrane, 5 Cir., 59 F.2d 375; Beach v. Macon Grocery Co., 5 Cir., 125 F. 513; In re Forty-One Thirty-Six Wilcox Bldg. Corp., 7 Cir., 100 F.2d 588.

But there is no occasion for this court to consider that part of the order appointing a receiver pendente lite at this time. The record does not show that the receiver took possession under the order appealed from; nor that the authorized contract was executed with the Blackstock Oil Company; nor that wells were ever drilled and oil taken and sold; nor that the appellants have sustained any damages as a result of any acts of the receiver. If it should be that the appellants claim to have a cause of action against the petitioner in his capacity, either as trustee or as receiver, it is presumed that the court will determine and adjudicate such claim according to the settled rules of equity applicable.

We hold that the petition on its face showed that the petitioner was not in possession, actual or constructive, of the mineral, oil and gas rights underlying the railroad right of way over and across the three tracts of land described in the deeds relied upon; that, consequently, the court was without jurisdiction to make the order appealed from; and that the order was wholly void.

It follows that the interlocutory order must be and it is reversed in its entirety with directions to the court below to dismiss the petition for want of jurisdiction.

Reversed.